I'm sorry, I did not hear that. I apologize. There's been a change in the cast of characters. I was expecting Mr. Courtney Wilson. I'm Courtney Wilson. You're Courtney, okay. Yes, sir. That's Courtney Wilson. I'm sorry. If I could pause everything for just a moment, Pam. He sounds distorted. I don't know if you're having trouble. Yes, sir. Courtney Wilson. Is that anything IT can deal with? Okay. Well, so long as Judge Dennis can hear you, maybe we can get started and before he needs to say anything again, they can work with it. Yes, sir. May it please the Court. My name is Courtney Parker Wilson for the appellant, Ms. Pearl Scott. You need to start a clock, Pam. I'm sorry. That's okay. May I proceed? Your Honors, I plan to present argument on two issues today, specifically that the district court improperly weighed the evidence and made a factual or credibility determination on summary judgment, and secondly that the district court improperly weighed the evidence instead of the admissibility of the plaintiff's expert's testimony. The first issue being the summary judgment issue. The plaintiff presented sufficient circumstantial evidence to create a question of fact on causation. We believe that Kmart v. Hardy controls here. In Hardy, the plaintiff had presented sufficient circumstantial evidence of Kmart's negligence with some key pieces of evidence, the plaintiff's testimony, photographs depicting the paint can display, testimony that the employees had set up that display, testimony that the display was unsafe, and testimony that the paint had come from the display, but very specifically, there was testimony that no one could tell if the appropriate shelving material had been placed in the paint can display. Counsel, where's your evidence here that the bin, the dump bin, the stacks of wood were done negligently? In other words, it seems to be different than Kmart, because here you've got some of those elements, but you don't have the key one, which is that there was any negligence in the way that this was displayed. So the plaintiff's, to answer your question specifically, the plaintiff's evidence on the negligence of the display itself is that the placement of the display was within the walkway. This was in violation of various standards, including the ASTM standards for walkway safety, the Code of Federal Regulations, and the ADA Act, which designates certain distances for exit widths and things like that. So that's more of a per se thing? I mean, in other words, in Kmart, you've got the paint, the dripping paint, the paint on the floor, but you also had testimony from somebody with Kmart that, well, it wasn't set up right. We have that here, too, Your Honor. Where is it? When we spoke to both the 30B6 witness and one of the employees at Rouse's, they said that the firewood cannot be on the ground the way it was here. That is unsafe all the time. It would never be able to be placed like that. What we're contending is— The firewood that was on the ground in the walkway, correct? On the concrete, yes, sir. Let's talk about the dump bin. Where's the evidence that the overall display was negligent? That evidence is coming from the plaintiff's expert, who would plan to testify that it is in violation of these various standards, that the AS— Would there be case law, though, that would rely on such standards as opposed to more general negligence standards? Well, I think it's— Would you look at the architectural standards or anything else? Well, Your Honor, I think it's all evidence of the negligence. But I'm asking about case law. Do you have any case law that would rely on those sorts of federal standards or industry standards? I do, Your Honor, and I cannot cite it offhand. Is it in your brief? Yes, sir, it is. Okay. I'll look for that. That industry standards and various regulations can be evidence of the duty owed or evidence of negligence. And that would be what we're contending here, that the display itself, as it was set up, was in violation of various standards, which is evidence of negligence. And then— In my brief, in talking about the standards, the narrowness of the walkway, whatever, the picture I see of the cardboard bin, I guess it is, outside of Rouse and the entranceway, I don't understand where that measurement is. It looks to me like a substantial width for people to get by. What is being measured when you say there's only 25 inches or something of passageway? So what's being measured is the distance from the corner of the store to the front of the ramp. And if you— Ramp? Yes, sir, the curb cut ramp. You're not talking about to the bin. I'm sorry? You're not talking about to the cardboard bin. You're not talking about the width. I mean, people have plenty of room, it seems to me, to get past this cardboard bin with the firewood in it, yeah? So I think we're speaking past each other. I apologize.  from the corner to the edge of the ramp. So we know what the total distance was. And then she subtracted the area of the pallet to come up with the 22 inches of available walkway space. Does that answer your question? You can keep going. Let me make sure you accept—I'm sorry, Judge Wilson. Let me make sure you accept this characterization of Mississippi law. It is from the Retzer opinion, but different opinions say different things. Fifth Circuit never does that, but some other courts do. You must show either one of these three. Some negligent act of the defendant caused the injury. The defendant had actual knowledge, didn't do anything. The dangerous condition existed for a sufficient amount of time. They should have been discovered. Are you under that first category, that Rouse's itself did something negligent, and that's what you're trying to prove? Yes, sir. And not any other theory? That's correct. We're contending that this is a created dangerous condition by the placement of the display, which encroached on the walkway, and then that available walkway space was further compromised when wood came out of the display into the walkway. My concern with that theory, and you may well be right, but let me just respond to this, and I think Judge Wilson was alluding to it to some extent, but maybe he was at a different point. It seems to me that the negligence that you need to show may well be there was something negligent about how the wood was stacked in that cardboard bin such that it's Rouse's fault that it fell out. We don't know why it was on the cement or the walkway. It was there, and your poor client fell over it. But you're not allowed to engage in speculation, and you're not arguing that it had been there long enough that Rouse's should have discovered it. So there needs to be something negligent about what Rouse's did that caused that wood to be on the concrete in order for it to be tripped over. I don't quite see how the width of the standards about what the necessary width for a walkway needs to be, how that would have affected it. What is the relevance in your mind of negligence or lack thereof and how Rouse's stacked the wood inside that bin? Well, we don't know anything about how Rouse's stacked the wood inside the bin because Rouse's didn't know anything about how the wood was stacked inside the bin. All we know is that Rouse's set up that display and decided where it would be placed. They were not supposed to stack it higher than the top of the cardboard bin or make it more of a pyramid shape up from the top of the bin. There's testimony from Mr. Beeson, the assistant manager, that those things should have happened, but not about what the status of that dump bin and the stacking of the wood was on that day. Status, you said? Yes. Okay, but there was no guidance that you got from Rouse's as to how the wood was supposed to be placed, how high it should be above the top of the cardboard sides. As far as I'm aware, there are no policies that speak to that. Mr. Beeson testified to some general guidelines that they want it to be stacked up against the wall and leaned in a certain way, but nobody took photographs. There is no video from that night that would depict how the display was actually set up, how the wood was actually set up in the display. You can see the outside of the dump bin and the bags of firewood on the ground, but you can't actually see into it. But isn't that the plainest burden to show it? Well, our contention here is that Rouse's is the only one who controlled it. Rouse's set that display up, they stocked that display, they maintained that display. I suppose it could sound like Gray's Ipsa, but I think because they are in control of it and they're the ones in... Let me interrupt you for a second. One question that sort of occurs to me is that, so what? She testified, did she not, the plaintiff, that she wasn't sure how the bundle of firewood got in the walkway. It could have been the customers that were coming out as she was going in. Was that Rouse's fault? I think that is what the Hardy case speaks to specifically in that in either scenario, right, whether it was Rouse's fault or a customer's fault, both of those rely on inferences. Well, but Hardy is, again, back to what Kmart did and what Kmart employees said about that end cap display. And they say in Hardy that nobody knows if the shelving material was there or not, and I think we've got the same thing here. Nobody really knows how the wood was stacked or not. There's a lack of evidence which requires you to make those inferential leaps, and I think our case is very similar  because in the same way you've got a display that employees set up, employees maintained, employees did the stacking on, and somehow or another a thing comes from the display to be on the ground and causes a dangerous condition. That's exactly the same thing that happened here. But I don't read Mississippi law to allow a claim like this without some evidence of an actual negligent act unless you're proceeding under Prongs 2 or 3, the actual notice or constructive notice. There are plenty of premises cases. I mean, I litigated them back in the day where there was something on the ground, water, liquid, whatever it is. But the same thing, the same argument you're making right now could apply to all those cases, and the plaintiffs in those cases lost. I think the negligent act here, the affirmative negligent act here is in the placement of the display itself. It does not conform to any of the standards that even Rouse has said it was supposed to conform to. Because there's no evidence, right? I'm sorry? You don't know. You can't make that statement or support it with evidence because there is no evidence that it was not stacked correctly. Well, it's not about it being stacked correctly. It's about the placement of the dump bin. See, they placed the display in the pedestrian walkway. But she didn't hit the dump bin, right? I'm sorry? She didn't hit the dump bin. That's correct, she didn't. But the dump bin compromises the walkway, which creates a danger. Then the bag falls from the dump bin display, further compromising the walkway and further creating more danger, if you will. So I think that the placement of the dump bin pallet display in and of itself creates the dangerous condition, which is only made worse when a bag of firewood falls into the walkway. Because now you've got a very small area of space to walk in. If the customers who are exiting the store made the bundle fall, is that a superseding cause? Perhaps. The problem is we don't have any evidence either way. And I think if you have to rely on circumstantial evidence and inferences, then it's just as likely that the faulty stacking or the faulty placement of this display is at fault as it is that somebody knocked it down. That statement is interesting. If you really don't know what happened, is 50-50 either way? You say the defendant loses? Is that the law of Mississippi? I think it's a question of fact on causation, and I don't think you can make it. I mean, if you really don't know how the wood got there, maybe some other patron put it there accidentally or put it down there and then decided not to buy it, whatever. Or maybe something else is due. I mean, really, I don't see what case you would be relying on that that sort of, I don't want to label it wrong, but that sort of guesswork allows you to go to a jury. I think Hardy stands for this proposition. In addition, the Munford case and the Winn-Dixie v. Hughes case. I read it as a 4-4 decision with a concurring opinion. So is that really the law of Mississippi? It's an odd case in this array, and it seems sort of out of alignment with the others. Well, I think all three of these cases stand for the proposition that when you are relying on circumstantial inferences, that is not a decision that can be made at the summary judgment stage. If you can't say this is what happened, a trier of fact has to make that determination. It can't be something that a judge says, well, I've decided this is what happened. Let me ask you about that. If you don't know what happened, whose burden is it to show what happened? Well, of course it's the plaintiff's burden to show what happened. No, it's not just summary judgment. Summary judgment is when you put in all the evidence you have. Yes, sir. It's not a matter of this is our preliminary evidence. If all the evidence that exists doesn't show what happened, doesn't the plaintiff not carry the burden? Well, I don't think we have to prove with 100% certainty what exactly happened. We have to present sufficient evidence that a reasonable juror could make a decision in our favor. There wouldn't be speculation. That's correct. But I think because of the evidence we have, including the three photographs, right, we've got three separate photographs taken on three separate occasions that show wood outside. That's the earliest photograph. That night, did somebody go back that day and take a picture of the bin? Yes, sir. Rouses takes the first picture. Ms. Perlscott's son goes back later that night, takes another picture, and then our expert went and did an inspection two years later and took another picture. In all three of those circumstances, there's wood on the concrete outside of its assigned display. So what you've got is a display that I think in and of itself creates a danger. And then there's more danger because there's firewood outside of it. But on top of that, we've got other photographs from different spaces in time where Rouses is maintaining this kind of dangerous condition. The firewood gets out of its assigned dump bin or pallet and ends up in the walkway, which is a designated pedestrian walk space. Ms. Rouse, I'm assuming your time has expired. You'll have five minutes on your button. Yes, sir. Thank you, Your Honor. Mr. Perl? Good afternoon. Pardon. Good afternoon, Your Honor. Just don't project too far. I'll do my best, Your Honor. May it please the Court. Nathan Burrow with Galloway Johnson on behalf of Rouses Markets. I was listening to the oral arguments, and of course, as the case always is, it took me off my outline immediately because it seems you all hit the two key points to be made here today. The question that Judge Southwick asks and the question that Judge Wilson asks control this case, not Kmart be hearty. Where is the connection between the bag of firewood on the ground and an act or a mission of Rouses? There is none. What do you do with the Mumford case? You were nodding your head when I said 4-4, but Mumford's out of line. It doesn't line up with what you just said. You saved me. I don't know what happened, and yet four of the judges said, we're good to go, and then a concurring judge said, well, I'll agree with the outcome. So let's say that is the law, the analysis is the law, as opposed to being just a 4-4 opinion without either side having a majority on the analysis. So take the Mumford analysis. Doesn't that sort of kind of apply here? You put words in my mouth earlier that I planned to say. Mumford is a strange opinion. It is a 4-4 decision with a concurrence. I don't know that it's ever been cited again successfully to thwart summary judgment in a premises case. I know it's cited by plaintiffs a lot. It has not been? Or what do you mean by you don't know? I don't know. I have not found, after looking, because I knew that question was coming, has Mumford been used to successfully beat summary judgment in the context of this case? I think Mumford... Was that a trial? Mumford? I believe Mumford was a trial, if I remember correctly. I think all three cases that plaintiffs cited in her brief or the district court judge cited in his opinion actually were cases that ultimately went to trial and then were overturned. The Mumford case, the difference is you have a store clerk who, within a known period of time, within approximately two hours, took cases of water and placed them on a display shelf. There's nothing to show what happened before or after, but we know that when the plaintiff fell, one of the cases was leaky. And the court probably, in my opinion, respectfully gave too much of a reasonable inference to the plaintiff in that case that if presented to a jury, a jury could reasonably find that the store clerk caused the case to leak because she was the last person to touch that case of water. I think that's... If you're going to make a distinction in our case, it's that plaintiff hasn't shown when Rouse has assembled the firewood display, and we also know that the firewood display was set out out front where it was meant to be picked through by customers buying firewood. It doesn't neatly fit into the package of Mumford where our employees were the last to touch it. Therefore, there's an inference that maybe we did something wrong. In this case, you have a bag of firewood on the ground that the plaintiff has no evidence to indicate how it got there or how long it was there. And on top of that, you have testimony from Rouse's that they were all trained not to display the firewood on the ground. They had never in the years prior had anyone trip over a bag of firewood. They had never seen a bag of firewood fall out of a display. And for Rouse's, that store does 400,000 to 500,000 sales a year. What about counsel Opposite's argument that the placement of the bin impinged on the walkway such that if something did fall out of the bin, you've got it right there where people are coming and going? I think to get there, plaintiff's expert has to be allowed to testify. And the district court was correct in ruling that that testimony, that Rouse's placement of the display, in and of itself constituted an unreasonably dangerous condition that created a foreseeable risk of injury. That would be irrelevant under Mississippi law because it is essentially a veiled mode of operation premises liability theory that Mississippi's Supreme Court and the Court of Appeals have repeatedly rejected. And in particular, I think... I've added my notes over here. It really looks like plaintiff's expert, in some ways, piggybacked off of the argument made before the Court of Appeals in Bonner v. Imperial Palace because that was absolutely the argument. I mean, you couldn't be on all fours more with the argument in Bonner, which is... Grape case? Yes, sir. You don't put grapes on a buffet, huh? And if you do, sell them on the stem, apparently, because the plaintiff in that case would have it, essentially, strict liability that if a grape is sold off the stem and it ends on the floor, that is negligence. And that's what the argument here is, is that... Well, it is certainly related. I know you're explaining, but it does seem to me that the plaintiff has a better case than a grape rolling around. First, grapes falling on the floor may not, and the general scheme of things, seem to be that dangerous. But firewood being in the walkway that might be... Particularly if you're pushing a court, maybe you're less likely to fall, but in a lot of ways you wouldn't see it. I am troubled by that argument, troubled in knowing what to do with it. I wouldn't... I must say, I was on the state bench for a number of years. I forget a lot of things, but I don't remember this mode of operation as some sort of exception. I think Judge Wilson came up with it when he was on the bench or something like that. But it does seem to me it's a legitimate argument, and if it's cancelled by this mode of operation doctrine, then so be it. But it does seem to me a legitimate, common-sense argument. If you have a bin full of something fairly solid, if you put it very near the walkway in or out of a store, things are going to fall out of that bin. And you may not be able to... You still may get into speculation as to whether that happened or not, so there may be another problem with it. Why isn't that more like the paint case? If you're going to stack paint... Kmart, I guess it is, if you're going to stack paint and you don't put the dividers in between or whatever the alleged problem was, they're going to be more likely to fall. If you put a bin and stack wood high on it, or pack something into it that could fall out, that's also potentially negligent. Let's take mode of operation out and say that's not a doctrine that applies here, certainly just for purposes of argument. What's wrong with your theory otherwise? I think Judge Wilson touched on it in the appellant's opening argument. Where is the link between an action or an inaction from Rouse's and the bag of firewood that's on the ground? In Kmart, you have a circumstantial evidence case, but it's a fairly convincing circumstantial evidence case to get past summary judgment. You have paint that matched the paint in an in-cap display. You have an in-cap display that was indisputably assembled by Kmart, and you have Kmart's merchandising manager who testifies that the way that's assembled, as shown in the post-incident photographs, is contrary to company policy, specifically because it made it unstable. If you put that together, you can say reasonably a jury could find that that paint can failed because of an act or an inaction of Kmart. There is no such link to connect the dots here. And whether you use expert testimony or you use lay witness, you're still asking the jury at the end of the day to speculate, to make a leap of logic on the most critical piece of evidence in your negligence case, which is causation. There's just simply nothing here to tie that bag on the ground to Rouse's. And when you take your focus off the bag and you turn your focus onto the display, again, Judge Wilson, I feel like I'm picking on you, you hit it on the head. She didn't trip over the display. She didn't fall off the curb because there wasn't an awful walking room. She tripped over a bag of firewood, a relatively large, bright orange bag of firewood, from a display that she admitted in her deposition she saw when approaching the store. So this isn't really a hidden condition either. Absent some evidence, and you haven't asked about it, but I have it on here because I think it ties nicely with Kapor, the Hughes case, the Winn-Dixie v. Hughes case, also a circumstantial evidence case. You have vermicelli. Someone falls on vermicelli. Never knew that was a hazardous condition, but apparently you can trip on vermicelli. It came from a cut-open bag. There was testimony elicited that the bag could have been cut open by some kids that were running around in the store, but it also could have been cut open by Winn-Dixie's employees who opened the boxes of vermicelli with a box cutter. There's at least something there to give the jury a reasonable inference of negligence one way or another. That is lacking here. And if I could, in prepping for this, I stumbled across a Northern District case that the Court recently upheld in Peters v. Fred Stores of Tennessee. That's 760 Federal Appendix 341. It's a 2019 case. It's much more akin to what we're dealing with here. It was a customer who fell on a piece of plastic in the aisles of Fred's while they were prepping for Christmas season. And she argued that she didn't have to show notice because there was general disarray in the store, and the manager admitted that items had frequently fallen on the floor in that area. The District Court granted summary judgment, and this court upheld it, specifically noting the customer couldn't identify the piece of plastic and link it to an affirmative act of negligence by Fred's and emphasized there's no evidence to show how it even came to be on the floor. Well, but here you've got a bin that, I mean, Rouse has set it up, right? They did. Rouse has positioned it. They did. Rouse has put the wood in it. They did. I mean, how does that not make it more like the Kmart case, as counsel opposite contends? Because there's nothing to show that Rouse's did wrong with the bin to make the firewood fall out. You're hypothetical there of, well, they put up the box. That's true for every merchandised item in a grocery store. If you go walking down the aisle and trip over a box of rice-a-roni, chances are it was originally put on the shelf by an employee. The fact that it ended up on the floor, we don't assume it was because an employee knocked it there or laid it there. If the plaintiff's expert's allowed to testify, does that survive summary judgment? I think if the plaintiff's expert was allowed to testify, it could survive summary judgment if the law in Mississippi recognized the mode of operation theory. Her testimony is only relevant to a mode of operation theory. And then the other hurdle... The plaintiff's expert... I'm sorry to interrupt. No, no, you... While it's on my mind, but if the plaintiff's expert's testimony comes in, does that give enough evidence to give rise to an inference of a negligent act by Rouse? Put mode of operation aside, like Judge Southwick had suggested, is there enough evidence there, then, to give an inference that Rouse did something negligent? Only if we conclude the district court abused its discretion in excluding her. Because even if you take mode of operation, if you focus on the firewood, you'll note that Ms. Campbell never offers an opinion to connect Rouse's to that bag of firewood on the ground. The best she can offer is that it wasn't a good idea to put a display by the door. And then her next step to get over that hurdle is, well, their inspection criteria wasn't good. They had an indoor written policy. But they didn't have an outdoor written policy. They relied on an informal training policy. Mississippi lull, another Imperial Palace case. I feel like I'm beating up on my local casinos. Another Imperial Palace case that is straight on point, that the district court cited in the opinion excluding Ms. Campbell's testimony, is Jones v. Imperial Palace that involved parking curbs. And there had been testimony in the case underneath that the parking curbs occasionally got misaligned. The Court of Appeals reversed the trial court in that case and said that creates an issue as to whether they were reasonably training their employees and making sure these things were straightened out. Well, on cert, the Supreme Court reversed and rendered that judgment and said you don't get there. You don't get to their inspection criteria wasn't sufficient. You don't get to their policies and procedures were insufficient. Until you can show that the condition was such that it was there for enough time that they could have reasonably discovered it, there is no evidence whatsoever in this record as to how long that bag was there. Even as you're talking, counsel, and proceeding in that argument, it starts to sound like either actual notice or constructive notice, which is not how they're proceeding. I mean, we're proceeding under inactive negligence, right? Absolutely. And I don't think you get into the inspection criteria as a form of active negligence in this case. And frankly... What if there was some evidence, hypothetical, what if there were some evidence that earlier in the day or that on some days plaintiff had a witness that said the firewood was stacked well above the top of the rim of the box, at least suggesting the possibility of if you move it much at all, some of it could fall off. Does that make it more like the Kmart paint can case? I think only... That's what it makes it more like. Does that put it in the category? It gets it closer, Your Honor. I think you still have to show that Rouse has trained its employees not to do that. That what? I think you would still have to get to testimony that Rouse has trained their employees not to stack it that way to get it into Kmart territory. Because Kmart wasn't... Kmart case is testimony. Like you're saying, they were told not to do it that way. But there also was testimony, separate piece of evidence from the same witness, I suppose, that it's dangerous, likely to fall, negligent, to stack it that way without whatever it was, dividers between each layer of paint cans. So I wonder if both of those are necessary, both an expert saying they're trained and also it's negligent. But it does seem to me that at least half of that would be consistent with you have a box full of loose items that are fairly solid, that if they fell off, if you stack them too high, it's more likely they would fall, and if they fell off, they could trip somebody. It seems to me that's close to a case under Mississippi law, even without testimony. It's at least a Mumford if it's not anything else. I think you're getting edging to where when we initially saw this case and we initially briefed the summary judgment motion, that's a mode of operation. I hate to keep coming back to it. I know I've been told to ignore that like that doesn't exist. But that is the barrier. You can figure out how that principle works. And if we decide it applies here, great. But if we decide it doesn't apply here, we want your answers. I still believe that even if mode of operation does not exist, you still have to show an affirmative act of some substance by Rouse's to create the unreasonably dangerous condition. In this case, there is no testimony that the box was overfilled. And, in fact, the testimony from Rouse's employees were they had never witnessed a bag of firewood fall out of one of these dump bins ever in all their years. What does the picture show from later in that same day of how full the box was? The picture, if I'm trying to remember which picture, there is a picture that was introduced that we pointed out that there was no affidavit accompanying it. It was not authenticated, offered in response to summary judgment. It appears to show a bag of firewood, but it's not even clear if it's at the dump bin because there's a pallet, but there's no dump bin visible. Then I know when the plaintiff's expert inspected, where she saw bags of firewood were on the opposite end of the store, far from the entrance where this happened, where there was no dump bin at all. I don't know what it was doing there. I don't know how long it had been there. But I think you run into the problem of substantial similarity, and both of those incidences, there's no indication that this bag was outside of a dump bin. Now, I could understand if there was substantial evidence that these bags fell out of the dump bin frequently and Rouse's was constantly having to go out there and corral them. At some point, the question becomes, is it negligent to display them in a dump bin? But again, this is the first time it had ever happened. Anything else? If you have nothing further for me, I'll take my seat. I appreciate you all's time. Thank you. Thank you, Your Honors. You brought up the Munford case with a counsel opposite, and in the Munford case specifically, you've got the water bottles that were stacked at some point, and counsel opposite's position seems to be that because you know an employee touched the water bottles sometime that day, that that is enough to create an inference of negligence. But in that case, there's no setting out of what that time period might look like, right? How long would be enough? How close in time would it have to be for that to count? Well, it was a couple hours. But that's my point. It's not specific, right? Is there a time frame? Does it have to be four hours under Mississippi law for it to fit? What is the plaintiff's evidence as to when the dump bin was last tended or rearranged by Rouse's? My recollection of the testimony is that the answer to that question in deposition was we're not sure. So I don't know that we know. But what we do know is that similar to the Hardy case and similar to the Munford case, Rouse's is the entity that's putting the merchandise there. They stack it, they stock it, they rearrange it, they go out there and refill it. I think control is the issue. And jumping back to the Hardy case. Is control the issue because of Munford? What case says control is the issue? I think you see that in all these cases. I think you see it in Hardy. I think you see it in Munford. I think you see it in Winn-Dixie v. Hughes. I don't think Kmart turned on control. It turned on a negligent display. I think in all these cases probably, depending on how you define control, the storekeeper has control of whatever the merchandise is that something happened and caused the injury. Well, yes. But in Hardy, they focus on this suggestion of shelving material, right? But the plaintiff in Hardy has no evidence that it wasn't there. It's just this idea about shelving material. Well, except that you had the Kmart employee say, well, I can't see if the shelving's there and it's not stacked according to what our policies would be. That's true. But here what you've got is an expert who's going to say that display is dangerous where it is in and of itself. Did the expert observe the display where it was when the plaintiff was injured? The expert was not there that day. Well, but when the expert came back and looked at the premises, were the premises materially the same as they were the day of the injury? The dump bin display was no longer there when the expert came and inspected. So she comes and measures the sidewalk, right? And that's how she gets all of her measurements. And the display is set on a pallet, which is a standard size, four by four. So that's how she comes up with the widths and the measurements. Is that the same measurements as the dump bin? The dump bin was on a pallet. So it's sitting on top of one of those wooden pallets. So she takes the measurement of the standard size pallet. What you've got here is an expert who's going to say this display is dangerous in and of itself because it's encroaching on the walkway. It's creating a hazard. But I just wonder, is the expert's analysis reliable if the expert isn't observing the dump bin where it was the day the plaintiff was injured, et cetera? Well, we have photographs of the dump bin where it was on the day that the plaintiff's incident happened. And if you look at it, you can see clearly in that photograph the yellow paint outline on the ramp. And it's very close to the ramp. You can see when you compare that photograph to photographs that our expert took later, which backs you out, and you can see the whole front walkway. You can see that it's very close, and it very much restricts the walkway space. And the problem here is that we know Rouse's is in control of that. We know they decided where to place the dump bin display. We know that encroaches the walkway. And then you've got an additional problem, right? Then the firewood gets out of the dump bin. It's in the walkway. It's creating even smaller space for somebody to walk. And you've got testimony from Rouse's employees. We've got to keep the floor clear. We know it's a hazard if there's something out there. But that just doesn't seem to apply to the outside of the store for some reason. I think under the Jones opinion and the Pig opinion, they have a duty to inspect, and that's included in the duty to keep the premises reasonably safe. And I don't think they're meeting that either, which would be further evidence of negligence. Is there anything further, Your Honors? Thank you so much. Thank you, Miss.